UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENISE BRADLEY,

      Plaintiff,                               Civil Action No.  18-11924

v.                                    HON. NANCY G. EDMUNDS
                                          U.S. District Judge
                                          HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Lenise Bradley ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #16] be GRANTED to the extent that the case is remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Docket #20] be DENIED.

-1-

## PROCEDURAL HISTORY

On December 11, 2015 and February 4, 2016 respectively, Plaintiff filed applications for SSI and DIB, alleging disability as of June 15, 2015 (Tr. 220, 222).   After the initial denial of the claim, Administrative Law Judge ("ALJ") Roy E. LaRoche, Jr. held a hearing on June 19, 2017 in Detroit, Michigan  (Tr. 34).   Plaintiff, represented by attorney Lloyd Pont, testified (Tr. 38-59) as did Vocational Expert ("VE") Scott Silver (Tr. 59-68).   On November 17, 2017 ALJ LaRoche found that Plaintiff was not disabled (Tr. 20-29).   On April 16, 2018, the Appeals Council denied review (Tr. 1-3).   Plaintiff filed for judicial review of the final decision on June 18, 2019.

## BACKGROUND FACTS

Claimant, born November 13, 1971, was 46 when the ALJ made the non-disability determination (Tr. 29, 220).   She  completed 11th grade and worked previously as a deli worker, laborer, and quality control inspector (Tr. 255-256).   Her application for benefits alleges disability due to lower back conditions (Tr. 254).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in a one-story house with her 77-year-old mother (Tr. 38).  The washer and dryer at the house were in the basement (Tr. 38).  She was right-handed (Tr. 38).  She stood 5' 6" and weighed 186, adding that she recently lost around 36 pounds (Tr. 39).  She avoided driving due to medication side effects, limiting her driving when she took her mother to her

monthly doctor's appointment (Tr. 39). Plaintiff's fiancé drove her to her own doctor's appointments (Tr. 40). She stopped working at her most recent job as a quality control expert after experiencing leg numbness (Tr. 43). She received Workers' Compensation benefits after leaving work (Tr. 44).

Plaintiff received treatment from an internist for diabetes and a neurologist for the back problems (Tr. 44). She saw both doctors on a regular basis (Tr. 53). Her diabetes was controlled with medication (Tr. 45). She had treated the back problems with physical therapy, steroid injections, and a TENS unit, none of which permanently improved her condition (Tr. 45). Her neurologist was contemplating the use of a spinal cord simulator (Tr. 46). She used a walker at the time of hearing due to recent multiple falls (Tr. 47). In response to the ALJ's citation to recent treating records noting the use of a cane, Plaintiff testified that she needed a walker at the hearing because she had refrained from taking pain medicine before her testimony and was in "extreme pain" (Tr. 49). She used a cane at home and a walker everywhere else (Tr. 54). She took Lyrica, Amitriptyline, Flexeril, Norco, and Metformin and experienced the side effect of drowsiness (Tr. 50). She did not smoke or use alcohol (Tr. 51). She stopped using marijuana in 2016 when she began taking prescription pain medication (Tr. 51).

In addition to the back problems, Plaintiff experience left arm numbness and was unable to lift even a gallon of milk with the left arm (Tr. 52). She spent the majority of her day watching television and listening to music (Tr. 54-55). She was unable to perform any

housework or laundry chores and relied on her fiancé and daughter to perform household chores (Tr. 55).

In response to questioning by her attorney, Plaintiff noted that she needed to change positions frequently (Tr. 55). She reported that she would have been unable to stay alert for the hearing if she had taken her pain medication (Tr. 56). Aside from medication side effects, she disliked driving due to leg numbness and coldness (Tr. 56). Sitting in a recliner with her legs elevated above head level partially alleviated leg swelling, tingling, and numbness (Tr. 53). She also coped with the pain by taking long hot showers (Tr. 57). Reaching with the left upper extremity caused back pain (Tr. 58). She was unable to stand without support (Tr. 59).

### B.    Medical Evidence

#### 1.  Treating Sources

In September, 2014, Plaintiff sought emergency treatment for numbness and pain of the left leg and toes (Tr. 323). She demonstrated a full strength of the leg with tenderness (Tr. 324). The same month, she also sought treatment for a ruptured Baker's cyst of the left knee (Tr. 312). Plaintiff reported pain but demonstrated 5/5 strength in all extremities (Tr. 315-316). She was given a nerve block and prescribed Norco on discharge (Tr. 322).

Emergency room records from June, 2015 note Plaintiff's report of low right-sided back pain extending into the left leg for three months (Tr. 326, 408). She was diagnosed with low back pain "without signs of spinal cord compression . . ." (Tr. 327). The same month,

primary care physician Ghazwan A. Atto, M.D. prescribed Norco for Plaintiff's report of level "10" back pain and "tingling, weakness and numbness" (Tr. 396-397).

Records from the following month show that the "constant" back pain now radiated into her left leg (Tr. 329).  At various times during the month she exhibited both a normal gait and range of motion and a reduced and painful range of lumbar spine motion (Tr. 331, 392, 416).  An MRI of the lumbar spine showed a broad based disc herniation at L5-S1 causing moderate right-sided neural foraminal narrowing (Tr. 332, 353, 480).  In August, 2015, she reported that she was unable to sit for more than 10 minutes and stand or walk for only "a few" minutes (Tr. 333).  Treating records note that Plaintiff presentation was compromised by "pain distress" and she walked slowly with a limp (Tr. 335-336, 341, 420). She demonstrated a limited range of lumbar spine motion (Tr. 340).  Dr. Atto noted her reports of continued back pain with weakness and numbness (Tr. 390).  Physical therapy records from the same month state that Plaintiff was not able to sit for more than nine minutes (Tr. 343).  Emergency room records state that she was given a walker "for stability with walking" after demonstrating an antalgic gait (Tr. 422).  The following month, Plaintiff was unable to attend a physical therapy appointment due to pain while attempting to dress (Tr. 344).  The same month, Dr. Atto observed neurological weakness and a reduced range of motion (Tr. 389, 429, 432).

September, 2015 therapy records state that she was unable to sit for more than nine minutes at a time (Tr. 435).  In October, 2015, Plaintiff reported equal pain from lower back

-5-

and lower extremities  and lower extremity numbness (Tr. 345, 437).  She also reported left

hand numbness about four times a week for about five minutes (Tr. 345, 446).  She reported

that she could sit for 20 minutes, stand for five, and walk two houses down the street (Tr.

235).  She denied the ability to lift even a gallon of milk (Tr. 345).  Norberto Roosen, M.D.

observed that her ability to walk was "poor" (Tr. 348, 449).  She was unable to stand on her

toes or heels (Tr. 348).  She demonstrated reduced strength of the left arm and severe

tenderness of the lumbar spine (Tr. 348, 350).  A straight leg raising test was positive (Tr.

451).  Surgery was not recommended (Tr. 350).  Plaintiff was advised to continue normal

activity "as tolerated" and undergo steroid injections (Tr. 451-452).  Dr. Atto also noted

continued back pain with leg weakness (Tr. 388).  He noted that Plaintiff was taking

Neurontin prescribed by a neurosurgeon (Tr. 388).  The following month, Dr. Atto noted her

report of continued leg pain (Tr. 385).  He prescribed compression stockings for venous

insufficiency (Tr. 384).  Plaintiff denied numbness (Tr. 384).

Dr. Atto's January, 2016 records note continued back and leg pain but no numbness

(Tr. 380-381, 460).  A February, 2016 MRI of the lumbar spine was consistent with August,

2015 results (Tr. 353-355).  An MRI of the thoracic spine showed "possible narrowing" with

"slight compression on the spinal cord at C6-C7 (Tr. 357, 377, 406).  An MRI of the cervical

spine was recommended (Tr. 406).  An April, 2016 MRI of the cervical spine ordered by Dr.

Atto shows mild stenosis at C6-C7 (Tr. 400, 485, 535).  Plaintiff exhibited a normal range

of motion but reported weakness and numbness  (Tr. 467-468). In June, 2016, Plaintiff

reported continued radiating back pain, worse on the left (Tr. 505). She declined an offer of prescription opioids, but opted for pain intervention techniques (Tr. 541). July, 2016 nerve conduction and EMG studies of the lower extremities showed evidence of bilateral radiculopathy worse on the left (Tr. 492, 523, 549). Plaintiff reported continuing radiating back pain and numbness the following month (Tr. 503). February, 2017 records by Dr. Atto note continued symptoms (Tr. 494). An emergency room evaluation from March, 2017 noted no neurological deficits (Tr. 565). April, 2017 pain management specialist records note continued severe pain, numbness, tingling, and weakness aggravated by sitting and standing (Tr. 551). An MRI of the lumbar spine from the same month with L5 nerve root involvement was consistent with the July, 2015 study (Tr. 557).

The same day, Dr. Atto completed an evaluation of Plaintiff's work-related abilities, finding that Plaintiff was unable to walk "zero" blocks without pain and was restricted to sitting 30 minutes at a time and standing for 15 (Tr. 581). He found that Plaintiff required work including a sit/stand "at will" limitation (Tr. 581). He found that she would be required to walk every half hour for five minutes and while sitting, needed to keep her legs elevated to heart level (Tr. 582). He found that the use of a cane was required for imbalance and weakness (Tr. 582). He limited Plaintiff to lifting less than 10 pounds occasionally but precluded all postural activities (Tr. 582). He found that she was limited to less than occasional reaching (Tr. 582). He found that Plaintiff would be off task for at least 25 percent of the workday and was incapable of even low stress work (Tr. 583). He found that

Plaintiff would be expected to have more than four work absences each month (Tr. 583).

## 2. Non-Treating Sources

In May, 2016, S. Gupta, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for four hours in an eight-hour workday; and push and pull without limitation (Tr. 79).  Dr. Gupta limited her to occasional postural activity and frequent (as opposed to constant) bilateral overhead reaching (Tr. 80).  He found that she should avoid concentrated exposure to hazards such as machinery and heights (Tr. 81).

## C.     Vocational Expert Testimony

VE Silver  classified Claimant's past relevant work as an inspector as light (light to medium as performed) and semiskilled; deli cutter-slicer, light/unskilled; and construction worker, semiskilled/heavy[1] (Tr. 61).  The ALJ then posed the following set of restrictions, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [L]imited to performing light work . . . however, they could only stand or walk four hours in an eight-hour day, sit for six hours, occasional climbing, balance, stoop, kneel, crouch and crawl, frequently overhead reaching with the bilateral

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

upper extremities and only occasional exposure to workplace hazards. Could you[r] hypothetical individual perform any of the past work, either as actually or generally performed in the national economy? (Tr. 62).

Based on the above restrictions, the VE testified that the hypothetical individual would be able to perform her past work as an inspector as the job was generally performed (Tr. 63). He testified that the above restriction would also allow for the light, unskilled work of a collator (464,000 jobs in the national economy); routing clerk (53,000); and inspector/hand packager (11,000) (Tr. 63). He testified that if the above limitations were amended to preclude climbing of ladders, ropes or scaffolds; limit the left upper extremity to frequent handling; and the need for a cane for walking prolonged distances or on uneven terrain, his job findings would remain unchanged (Tr. 64).

The VE testified that if the restrictions were further amended with a limitation to sedentary work, the individual would be unable to perform any past relevant work but could perform the sedentary, unskilled work of an order clerk (212,000); addresser (104,000); and stuffer (72,000) (Tr. 65). He stated that a sit/stand option "at will" option would not change the job numbers (Tr. 65). He testified that the need to be off task for more than 10 percent of the workday, or, the need for two or more absences each month would preclude all unskilled competitive employment (Tr. 66). He stated that his testimony regarding the use of a cane, being off task, and absences was based on his own professional experience (Tr. 66).

In response to questioning by Plaintiff's counsel, the VE stated that a limitation to forward reaching for only 20 percent of the workday; the need to elevate the legs to heart height for one hour every workday; the need for five-minute breaks every half hour; or, the need to lean against something while standing would eliminate all gainful employment (Tr. 67-68).

### D.   The ALJ's Decision

Citing the treating records, ALJ LaRoche found that Claimant experienced the severe impairments of "obesity, degenerative disc disease of the cervical spine and lumbar spine, and diabetes mellitus" but that none of the impairments met or medically equaled the severity of an impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23).  He found that the condition of a Baker's cyst of the left knee was a non-severe impairment (Tr. 23). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional limitations:

> [N]o climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; frequent overhead reaching with the bilateral upper extremities; occasional exposure to workplace hazards; frequent handling with the left upper extremity; requires use of a cane for prolonged ambulation (greater than 50 feet) or on uneven terrain; and requires the ability to sit and stand at will, provided she is not off task for more than 10 percent of the workday (Tr. 23).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the sedentary, unskilled work of an order clerk, addressor, and stuffer (Tr. 28, 65).

The ALJ discounted the allegations of disability, stating that Plaintiff's testimony that she

was unable to lift a gallon of milk stood at odds with her February, 2016 statement that she could lift up to 15 pounds (Tr. 26-27, 52). The ALJ accorded "little weight" to Dr. Atto's April, 2017 finding that Plaintiff was unable to perform even sedentary work, citing treating records from the previous month showing a steady gait with a cane (Tr. 26). The ALJ noted that Dr. Atto's assessment was undermined by the fact that he was Plaintiff's primary care physician and "not a specialist in the areas of orthopedics or neurology . . ." (Tr. 26-27).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

-11-

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[2]

### The Treating Physician Analysis

Plaintiff takes issue with the ALJ's assignment of only "little weight" to  Dr. Atto's April, 2017 assessment.  *Plaintiff's Brief,* 13-18, *Docket #16,* Pg ID 652.  Contrary to the ALJ's findings, she contends that Dr. Atto's assessment is not inconsistent with other

---

[2]

Plaintiff does not contest the ALJ's finding that the condition of depression was non-severe (Tr. 20-21).  My own review of the treating records notes that Plaintiff consistently exhibited a normal affect, mood, and orientation.  Thus, I finding no error in the ALJ's finding that the mental health limitations were non-severe.

substantial evidence in the record and was thus entitled to the deference generally accorded a treating physician's opinion.[3]  *Id.* at 14-15.  She notes that Dr. Atto's assessment, if adopted, would result in a disability finding.  *Id.* at 16 (*citing* Tr. 26)).

For the period under consideration, the opinion of a treating physician should be given controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence."  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) 20 C.F.R. § 404.1527(c)(2)); SSR 96–2p, 1996 WL 374188, *5 (1996)).[4]  In the instance where the ALJ declines to accord controlling weight, he or she must provide "good reasons" for discounting the treating opinion.  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013);  *Wilson,* 378 F.3d at 544–546 (6th Cir. 2004);  SSR 96–2p, 1996 WL 374188, at *5.   The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes

---

[3]

Because the purported reasons for rejecting Dr. Atto's assessment are either not supported or contradicted by the record, the Court need not address Plaintiff's additional argument that the ALJ applied the incorrect standard in assessing Dr. Atto's treating opinion. *Plaintiff's Brief* at 14-15 (*citing* Tr. 26).

[4]

The administration rescinded SSR 96-2p on March 27, 2017. See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 27, 2017). Under the new rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. The "new rules, however, apply only to claims filed on or after March 27, 2017." *Hancock v. Commissioner of Social Security*, 2017 WL 2838237, at *8 (W.D. Mich. July 3, 2017)(*citing Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan 18, 2017) ). Because current Plaintiff filed her claim well before March 27, 2017, SSR 96-2p applies.

reversible error. "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Gayheart*, at 376 (*citing* SSR 96–2p, at *5).

As discussed above in section II.B.1., Dr. Atto's April, 2017 assessment states that Plaintiff was unable to walk for any distance without pain and was restricted to sitting 30 minutes at a time and standing for 15 (Tr. 581). Dr. Atto found that Plaintiff required work including a sit/stand "at will" limitation (Tr. 581). He found that she would be required to walk every half hour for five minutes and while sitting, needed to keep her legs elevated to heart level (Tr. 582). He found that the use of a cane was required for imbalance and weakness (Tr. 582). He limited Plaintiff to lifting less than 10 pounds on an occasional basis and precluded all postural activities (Tr. 582). He found that she was limited to less than occasional reaching (Tr. 582). He found that Plaintiff would be off task for at least 25 percent of the workday and was incapable of even low stress work (Tr. 583). He found that Plaintiff would be expected to have more than four work absences each month (Tr. 583).

The ALJ acknowledged that Dr. Atto's assessment described disability level limitations (Tr. 26). The ALJ then provided reasons for according only "little weight" to the

-14-

assessment, noting (1) March, 2017 examination records noted a steady gait with the assistance of a cane, (2) the April, 2017 MRI of the lumbar spine showed that Plaintiff's condition was "stable," and, (3) Dr. Atto was not an orthopedic or neurological specialist (Tr. 26-27). He discounted Plaintiff's testimony that she was unable to lift even a gallon of milk, stating that he stated in her Function Report that she could lift up to 15 pounds (Tr. 27). He added that Plaintiff's testimony that she needed to use a walker was not supported by the record, claiming that "there are no references to use of, let alone prescription for, a walker in the medical records" (Tr. 27). He reiterated that the April, 2017 MRI showed that the lumbar spine herniation was "stable" (Tr. 27).

The ALJ's reasons for rejecting Dr. Atto's assessment, and by extension, Plaintiff's allegations of limitation are not wholly supported by the record. While the ALJ cited the July, 2015 and April, 2017 MRIs of the lumbar spine to support his characterization that Plaintiff's condition was "stable," (Tr. 26-27), Plaintiff's condition as of April, 2017 is better characterized as "unchanged," or "not improved" from the previous studies. June, 2015 emergency treatment for low back pain with left-sided "tingling weakness, and numbness," borne out by the July, 2015 MRI showing a broad based disc herniation at L5-S1, are consistent with April, 2017 pain management records showing severe pain, numbness, tingling, and weakness aggravated by sitting and standing (Tr. 327, 332, 396-397, 551). To be sure, the ALJ correctly observed that one March, 2017 emergency room examination record notes a steady gait with the assistance of a cane (Tr. 554). However, the emergency

report, read as a whole, indicates that Plaintiff sought treatment for an exacerbation of lower back pain with thigh cramping (Tr. 552-554).  The fact that she was able to walk with a steady gait with a cane for a limited time and distance during one emergency visit does little to contradict numerous treating records by both Dr. Atto and pain management specialists, and July, 2016 nerve conduction/EMG studies, indicating chronic pain and neurological symptoms (Tr. 345, 388, 435, 451, 467, 492, 494, 503).  While the ALJ discounted Dr. Atto's assessment in part because he was not an orthopedic or neurological specialist, Dr. Atto's records include the results of the imaging studies and pain specialists' records.  *See Haverkate v. Astrue*, 2010 WL 668284, at \*9 (M.D.Fla. February 19, 2010)(ALJ erred by rejecting treating physician's opinion on basis that "she is a family practice physician and her assessment rests outside her area of expertise[.]" ALJ "ignores the fact that, as [claimant's] long time treating physician, she was privy to the other [] health evidence of record").

Because the ALJ's rejection of Dr. Atto's assessment contains both mischaracterizations of the record and outright inaccuracies, a remand is appropriate for further consideration of the treating assessment.  *Johnson v. Commissioner of Social Sec*., 652 F.3d 646, 652 (6th Cir. 2011)(Remand appropriate in the instant that ALJ's reasons for rejecting treating physician's opinion not supported by substantial evidence).[5]

---

[5]

In *Johnson,* the Court remanded the case for an award of benefits.  In contrast here, a remand is required for determination of whether Dr. Atto's assessment was entitled to *somewhat* greater weight (requiring vocational testimony as to whether a more restrictive RFC would allow for a significant range of work); or, that Dr. Atto's assessment should be adopted in full.

-16-

In addition to the weak record support for the rejection of Dr. Atto's assessment, the administrative findings contain two misstatements of the record. First, the ALJ discounted Plaintiff's testimony that she was unable to lift a gallon of milk on the basis that in an earlier functional support she reported the ability to lift up to 15 pounds (Tr. 27, 52, 267). However, her testimony, read in context, indicates that she was referring to her limitations of the *left* side only, whereas in the functional report, her "15 pounds" statement was offered to describe her lifting abilities without reference to either upper extremity (Tr. 52, 267). The ALJ's conclusion that Plaintiff's testimony that she was unable to lift a gallon of milk with her left hand contradicted her functional report was based on a misreading of the record.[6] Further, while the ALJ rejected Plaintiff's claim that she required the use of a walker on the basis that "there are no references to use of, let alone prescription for, a walker in the medical records," August, 2015 emergency room records clearly state that Plaintiff was given a walker "for stability with walking" after demonstrating an antalgic gait (Tr. 27, 47, 422). The ALJ's third and final reason for rejecting Plaintiff's allegations was based on his finding that the April, 2017 MRI of the lumbar spine showed that her condition was "stable" (Tr. 27). As discussed above, the fact that the disc herniation remained unchanged in the 22 months between the first and last MRI does not imply that the back condition was less than disabling.

Because all three of the ALJ's reasons for discounting Plaintiff's claims are based on

---

[6]

Moreover, Plaintiff's functional report that she was limited to lifting up to 15 pounds is not inconsistent with Dr. Atto's finding that she could lift less than 10 pounds if required to do so for up to one-third (occasional) of an eight-hour workday (Tr. 582).

either misstatements or mischaracterizations of the record, a remand is also warranted for reconsideration of her subjective allegations of pain and limitation.

Notwithstandin that the non-disability determination contains critical misstatements of the record, an award of benefits is premature. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, I recommend a remand for further administrative proceedings consistent with this Report.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #16] be GRANTED to the extent that the case is remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Docket #20] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issues first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,*

932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response must address specifically, and in the same order raised, each issue contained within the objections.


           s/ R. Steven Whalen
           R. STEVEN WHALEN
           UNITED STATES MAGISTRATE JUDGE
Dated: June 19, 2019


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 19, 2019, electronically and/or by U.S. mail.

           s/Carolyn M. Ciesla
           Case Manager to the
           Honorable R. Steven Whalen